Ryan C. PEETOOK, Appellant,

v.

STATE of Alaska, Appellee.

No. 6630.

Court of Appeals of Alaska.

Dec. 3, 1982.

Joel H. Bolger, Asst. Public Defender, Barrow, and Dana Fabe, Public Defender, Anchorage, for appellant.

Larry C. Zervos, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Ryan Peetook was convicted on his plea of *nolo contendere* to an information charging him with sexual assault in the first degree, in violation of AS 11.41.410(a)(1). First degree sexual assault was, at the time of Peetook's offense, a class A felony. Former AS 11.41.410(b).[1] After Peetook's plea was accepted a sentencing hearing was held, and Superior Court Judge Jay Hodges sentenced Peetook to a term of twenty years' imprisonment, with five years suspended. Peetook appeals this sentence as excessive. We affirm.

Peetook initially asserts that he was given a maximum sentence and that imposition of a maximum sentence was unjustified in the absence of an express finding that he was within the category of worst offenders. He relies on *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975). Peetook maintains that, since he was twenty years of age at the time of this offense and had no adult felony convictions, and since his offense was not the most serious in its class, he cannot properly be characterized as a worst offender.

---

1. For class A felonies, the maximum penalty is twenty years' imprisonment; presumptive sentences of ten and fifteen years are prescribed for second and third felony offenders, respectively. AS 12.55.125(c). In addition, a presumptive term of six years was specified, at the time of Peetook's offense, for any first offender using a firearm or causing serious physical injury during the commission of a class A offense. Former AS 12.55.125(c)(1).

During its 1982 session, the Alaska Legislature revised provisions of the criminal code relating to first degree sexual assault. Under the amended provisions, effective October 1, 1982, first degree sexual assault is an unclassified felony, with a maximum penalty of thirty years' imprisonment. A presumptive term of eight years is required for all first offenders except those who carried a firearm, used a dangerous weapon, or caused serious physical injury in committing their offense, in which case the presumptive sentence specified is ten years. Presumptive sentences for second and third felony offenders under the amended provisions are increased to fifteen and twenty-five years, respectively. *See* Ch. 143, §§ 6, 30, SLA 1982.

■ We do not find this argument meritorious, since Peetook did not receive a maximum sentence. It is true, as Peetook contends, that we must consider the entire sentence which he received, including any portion that was suspended. However, as the supreme court noted in *Leuch v. State,* 633 P.2d 1006, 1010 (Alaska 1981), "[i]t would ... be unrealistic to consider ... suspended time to be as harsh a sanction as time to be served in prison." Thus, the supreme court has recognized that a sentence imposing a maximum term, but suspending a portion of that term, will not be considered a maximum sentence. *Ferreira v. State,* 602 P.2d 803, 806 (Alaska 1979). Because five years of Peetook's twenty year sentence were suspended, he cannot be deemed to have received a maximum sentence. Consequently, no express finding of worst offender status was required in this case.

Peetook further asserts that, in light of his status as a first felony offender, the sentence he received was unjustified. Peetook maintains that his case is not an exceptional one, and he argues that the maximum sentence in his case should therefore not have exceeded the six-year presumptive term prescribed for aggravated first offense class A felonies—those involving possession or use of a firearm or infliction of serious physical injury. AS 12.55.125(c)(1).

■ We believe it is essential for judges imposing non-presumptive felony sentences to give consideration to the presumptive sentences provided for in the revised criminal code. Sentencing of first felony offenders to whom presumptive sentencing does not directly apply must be accomplished, primarily, by a careful balancing of the sentencing goals set out in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970). *See Juneby v. State,* 641 P.2d 823, 833–34 (Alaska App.1982). *See also* AS 12.-55.005. This does not mean, however, that presumptive sentencing provisions can be entirely ignored in the process of sentencing first offenders. It would be anomalous to conclude that, in enacting the elaborate framework of the presumptive sentencing provisions, the legislature intended first felony offenders to receive more severe penalties than would legally be permissible, under the presumptive sentencing law, for second offenders who committed the same criminal acts. Statutorily prescribed presumptive sentences should thus be regarded as benchmarks which, in the absence of significant aggravating circumstances, define the limits of appropriate sentences for first felony offenders who are not subject to presumptive sentencing. Non-presumptive felony sentences must give reasonable recognition to the presumptive sentencing framework, for only in this manner can it be assured that first offenders to whom presumptive sentencing is inapplicable will not arbitrarily be subjected to harsher treatment than similarly situated offenders who have previously been convicted of a felony and who are therefore required to be sentenced presumptively.

■ Accordingly, in *Austin v. State,* 627 P.2d 657, 657–58 (Alaska App.1981), we stated: "Normally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender. It is clear that this rule should be violated only in exceptional cases." We have also recently indicated that, in deciding whether a first felony offense is exceptional under *Austin,* it is appropriate for the sentencing court to determine whether any of the aggravating factors specified in AS 12.55.-155(c) apply to the case at hand or whether any additional, unspecified aggravating factors exist that would constitute extraordinary circumstances under AS 12.55.165 and that would warrant referral of the case to a three judge sentencing panel if presumptive sentencing applied. *See Sears v. State,* 653 P.2d 349, at 350 (Alaska App.1982).

■ In the present case, however, we do not believe that the sentence received by Peetook can be faulted for exceeding presumptive sentences prescribed for class A felony offenders. There is ample evidence in the record before us to justify a conclusion that the present case is an exceptional one, as contemplated by our decision in *Austin.* We believe that Peetook's crime is

sufficiently aggravated, by reference to AS 12.55.155(c) and 12.55.165, to justify a sentence substantially in excess of the presumptive term for a second felony offender.

In committing his offense, Peetook entered the house of his victim, R.B., without consent. No one was present at the time besides R.B., who was asleep. Peetook attacked R.B. as she lay sleeping in her own bed. In the struggle that ensued, Peetook threatened to kill R.B. if she did not stop resisting him, and when she continued to resist he stabbed blindly at her face from behind with a knife, inflicting a severe cut to her forehead. Ultimately, Peetook was able to force R.B. to submit by beating her with his fists. He then undressed her and forced her to have sexual intercourse with him. When R.B. struggled free, Peetook tied her hands behind her back. Over a two-hour period, Peetook engaged in forcible sexual intercourse with R.B. six or seven times. R.B. resisted continuously. Between his repeated sexual assaults, Peetook would untie and release R.B., only to recapture her, tie her up again and renew his attack. During this prolonged episode, Peetook told R.B. that she was going to have a baby, and he ordered her to "talk dirty." Peetook continued to strike R.B. repeatedly throughout the two-hour period of his assault; he caused R.B. to sustain black eyes and severe swelling in her face. Additionally, while having sexual intercourse with R.B., Peetook repeatedly bit her about the face and body, inflicting additional injuries. Peetook's assault of R.B. was terminated only by the fortuitous arrival of a friend at R.B.'s home.

A number of aggravating factors specifically enumerated in AS 12.55.155(c) would be applicable to Peetook's offense if it were subject to presumptive sentencing. Peetook chose to attack R.B. while she was sleeping and, therefore, particularly vulnerable. See AS 12.55.155(c)(5). Additionally, the injuries inflicted by Peetook—in particular, the wound that he caused by stabbing R.B.'s forehead with a knife—were significant. See AS 12.55.155(c)(1). Furthermore, Peetook's continuous and vicious biting of R.B., his repeated binding and unbinding of her, his statement to R.B. that she was going to have a baby and his demand that R.B. "talk dirty" while he assaulted her all support the conclusion that Peetook was deliberately cruel to R.B. See AS 12.55.-155(c)(2).

When these factors are considered in conjunction with the prolonged and repeated nature of Peetook's sexual assault and the fact that Peetook committed the assault by invading the privacy of R.B.'s own home, we believe that the further conclusion is warranted that Peetook's conduct was among the most serious within the definition of first degree sexual assault. See AS 12.55.155(c)(10).[2] We note that, in imposing sentence, Judge Hodges expressly found Peetook's conduct to be among the most serious in its class.[3] We deem this finding fully supported by the record.

---

**2.** Since the finding that Peetook's conduct was among the most serious within the definition of the offense, pursuant to AS 12.55.155(c)(10), would be based partly on other specified aggravating factors, this factor should properly be viewed as subsuming the aggravating factors upon which it is based. To this extent, the fact that Peetook's conduct was among the worst within the definition of the offense would, at the very least, justify giving this factor the aggregate weight that would otherwise have been accorded to the other individual aggravating factors, in addition to the weight attributable to the repeated nature of Peetook's attack and the fact that the attack was committed in R.B.'s house.

**3.** Specifically, Judge Hodges found:

[C]ertainly in the class of forcible rapes, or as they are now called sexual assault in the first degree, this particular offense is extremely aggravated. Mr. Peetook went to the victim's house early in the morning, uninvited, kept her captive for a period of time, excuse me; bound her; cut her with a knife, bit her on the face and engaged in sexual penetration on a number of occasions. This certainly can—it may not be the worst ... first degree sexual assault case, but it certainly is in the top ten per-cent of the first degree sexual assault cases.

In this regard, Peetook directs our attention to a number of sexual assault cases, contending that they are examples of more egregious conduct than that involved in the present case. See, e.g., Tuckfield v. State, 621 P.2d 1350 (Alaska 1981); Fomin v. State, 619 P.2d 718

In addition to the aggravating factors specifically enumerated in AS 12.55.155(c), we think that Peetook's history of criminal involvement provided an extraordinary circumstance that the sentencing court could properly take into account. Although Peetook had never previously been convicted of a felony, he was adjudicated a delinquent in 1978 after he admitted committing four separate incidents of joyriding. His juvenile probation was thereafter revoked, and he was placed under a deferred order of detention until his nineteenth birthday. The revocation was the result of two theft-related incidents, both of which could have constituted felonies if charged against an adult. After turning nineteen years of age, Peetook, by his own admission, took part in a burglary. Although arrested for the offense, Peetook was not prosecuted, apparently because of the state's belief that a conviction would be difficult to obtain with the jury selected from the vicinity of Peetook's home village of Wainwright. In addition to the burglary, Peetook had also been questioned in connection with trespass charges. The specific nature of the charges is particularly significant to the facts of this case. A young Wainwright woman reported to police that she awakened in her bed to find Peetook bending over her, reaching for her mouth with one hand while handling his penis inside his pants with his other hand. Peetook admitted this accusation upon questioning, but the offense was not charged because Peetook's family and the family of the victim, Peetook's cousin, decided to resolve the problem informally, through traditional village channels in Wainwright.

In our view, this personal history provided the sentencing court with ample information upon which to conclude that Peetook, although a first felony offender, had consistently been involved in illegal and antisocial acts, with no apparent effort to exercise restraint or to conform his conduct to the requirements of the law.[4] We thus think that Peetook's background of criminal misconduct constituted an additional and significant factor that could properly be considered by the sentencing court in addition to other aggravating factors involved in his offense. In light of the totality of the information concerning Peetook's background and the manner in which he committed this offense, we conclude that the sentencing court was fully justified in deciding that this case warranted imposition of a sentence in excess of the presumptive terms provided for by AS 12.55.125(c).

■ Peetook's final claim is that the sentence imposed by Judge Hodges was unduly harsh in that it failed to give adequate consideration to the need for rehabilitation. There can be no question that Judge Hodges, in imposing the sentence that he did, placed primary emphasis on isolation and deterrence of Peetook, on deterrence of others, and on community condemnation, or reaffirmation of societal norms. It is apparent that these factors were given priority over Peetook's rehabilitation. While the sentencing court was obligated to consider all of these goals in fashioning a sentence, *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970), it was primarily the court's responsibility to determine the weight and priority to be accorded to each goal, and the goal of rehabilitation need not have received the

---

(Alaska 1980); *Abraham v. State,* 593 P.2d 621 (Alaska 1979); *Bordewick v. State,* 569 P.2d 184 (Alaska 1977); and *Edenshaw v. State,* 631 P.2d 506 (Alaska App.1981). We do not necessarily agree with Peetook's assessment of the relative seriousness of these cases as compared with the present case. In any event, it is sufficient to note that the aggravating factor specified in AS 12.55.155(c)(10) requires only a finding that the defendant's conduct was *among* the most serious within the definition of the offense. Thus, in order to find an aggravating factor under this provision, it is not necessary

to establish that there are no other cases involving more serious conduct; it is sufficient if the offense falls within the general class of the most serious offenses.

4. In light of the somewhat bizarre conduct manifested by Peetook in connection with this offense, it is commendable that Judge Hodges took the precaution of obtaining a psychiatric evaluation of Peetook before imposing sentence. The psychiatric report submitted to the court indicated no evidence of treatable mental illness.

greatest emphasis. *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973). *See also State v. Lancaster,* 550 P.2d 1257, 1259–60 (Alaska 1976). The courts of Alaska have repeatedly recognized the particular gravity of forcible sexual assaults such as the one committed in the present case. *Mallot v. State,* 608 P.2d 737, 752 (Alaska 1980); *Newsom v. State,* 533 P.2d 904, 911 (Alaska 1975); *Davis v. State,* 635 P.2d 481, 488 (Alaska App.1981). The Alaska Supreme Court has declared that, in such cases, significant weight must be given to the sentencing goal of community condemnation. *State v. Lancaster,* 550 P.2d at 1260.

We recognize, especially in light of Peetook's young age and his lack of any prior felony conviction as an adult, that a fifteen year sentence is a long time. *Newsom v. State,* 533 P.2d at 912. However, in this case, Judge Hodges discussed and gave appropriate consideration to all of the *Chaney* sentencing goals before imposing Peetook's sentence. We cannot say that Judge Hodges was clearly mistaken in failing to give higher priority to the sentencing goal of rehabilitation.[5] *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.

---

**5.** We note that Judge Hodges expressly recommended alcohol therapy and psychiatric treat- ment for Peetook during his incarceration.